* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff-employee is Teresa J. Simpson. *Page 2 
2. Defendant-employer is Schenker Logistics.
3. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The North Carolina Industrial Commission has jurisdiction over the subject matter and the parties involved in this case.
5. On all relevant dates, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
6. An Employee-employer relationship existed between plaintiff and defendant-employer on April 15, 2008.
7. The carrier on the risk is CNA Claims Plus/American Casualty Company.
8. Based on the Form 22 submitted by defendants, plaintiff's average weekly wage is $414.47, yielding a compensation rate of $276.33.
9. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Notebook of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 i. Medical Records;
 ii. Industrial Commission Forms and Filings;
 iii. Discovery Responses;
 iv. Employment Records and;
 v. An Accident Report.
10. The issues before the Deputy Commissioner were whether defendants are *Page 3 
responsible for the total left knee replacement recommended by Dr. Peter Dalldorf; whether plaintiff is entitled to total disability compensation for the period commencing as of the date she last worked for defendant-employer; and whether defendants should be sanctioned for allegedly improperly filing an Industrial Commission Form 28T and terminating plaintiff's indemnity compensation. The only issue before the Full Commission is whether plaintiff is entitled to payment of temporary partial disability compensation from September 14, 2008-December 17, 2008.
 * * * * * * * * * * *
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 49 years old. Plaintiff was employed by defendant-employer as a stager at its distribution facility in Brown Summit. In this capacity, plaintiff's duties involved staging various product and inventory on pallets.
2. On April 15, 2008, plaintiff was checking bar codes on pallets in the staging area when she tripped over a pallet and fell down onto her knees, with her left knee striking a pallet.
3. Defendants admitted the compensability of plaintiff's injury through the filing of an Industrial Commission Form 60 filed on April 24, 2008. On this Form 60, defendants noted that plaintiff tripped over a pallet and fell onto her left knee.
4. Plaintiff initially treated with Dr. Jeffery R. Greene at Urgent Medical Family Care in Greensboro. Dr. Greene diagnosed plaintiff as having sustained a left knee injury and a left knee contusion. *Page 4 
5. After a brief period of conservative treatment including pain medication and demobilization of her knee, Dr. Greene referred plaintiff to an orthopedic specialist, Dr. Peter Dalldorf.
6. Dr. Dalldorf initially examined plaintiff on April 28, 2008. An MRI revealed degenerative changes in her knee, as well as a stress fracture of the anterior tibial plateau. Dr. Dalldorf diagnosed plaintiff as having a moderate to severe degenerative change in her left knee which was made symptomatic by her fall at work.
7. After a period of conservative treatment, Dr. Dalldorf performed a left knee arthroscopic procedure on August 14, 2008. Following this surgery, plaintiff continued to experience significant left knee pain.
8. On August 27, 2008, Dr. Dalldorf released plaintiff to return to light duty sit-down, clerical type work. After some initial confusion regarding her restrictions and a drug test, plaintiff eventually returned to work for defendant-employer in a light duty position.
9. Jack Mitchell, safety manager for defendant-employer, testified that plaintiff missed many days from work from September through December 2008, even though suitable work had been offered to her. In total, defendants contend that plaintiff had 37 unexcused days from work during this period. In support of their contention, defendants note that plaintiff was offered a golf cart to use as transportation from the parking lot to defendant-employer's warehouse, but that she refused this offer. However, according to Mr. Mitchell, the golf cart was not offered until December 2008.
10. During this same period, plaintiff continued to experience left knee pain and had problems walking the half mile from the parking lot to the warehouse. On some days plaintiff missed work due to doctor's appointments. She was sent home on occasions by defendant-employer *Page 5 
due to confusion about doctor's notes and because defendant-employer would not allow her to work while taking Vicodin for pain. In November 2008 defendant-employer offered plaintiff a data entry job but plaintiff missed work for a week to take a planned vacation. She started the new job in December and at that time was offered the use of a golf cart from the parking lot to the office. She worked one week until she was taken out of work by Dr. Dalldorf on December 17, 2008.
11. At no time during the period plaintiff worked in a light duty position did she earn wages more than $414.47 per week, her pre-injury average weekly wage. Nonetheless, defendants filed an Industrial Commission Form 28T erroneously reflecting that plaintiff had returned to work earning the same or greater wages she earned as of April 15, 2008.
12. Despite the record containing contradictory evidence regarding plaintiff's effort while working in her light duty positions, specifically regarding the distance from the parking lot to the warehouse and offer of the use of a golf care, there is insufficient evidence upon which to find that plaintiff unjustifiably refused suitable employment at any time.
13. As of October 2008, Dr. Dalldorf opined that plaintiff's injuries that were directly caused by her admittedly compensable April 15, 2008 injury by accident, specifically her meniscal tear and stress fracture, had completely healed. Despite Dr. Dalldorf's opinion, a repeat MRI revealed that plaintiff's aggravated degenerative arthritis had worsened since her arthroscopic surgery.
14. On November 17, 2008, Dr. Dalldorf first recommended a total left knee replacement. He repeated this recommendation on December 1, 2008, December 12, 2008, January 5, 2009 and January 28, 2009. On each of these dates, Dr. Dalldorf discussed his willingness to facilitate a second opinion regarding the need for the recommended surgery, *Page 6 
should the workers' compensation carrier request one, but no such request was ever made.
15. Dr. Dalldorf has opined to a reasonable degree of medical certainty that plaintiff's injury caused her pre-existing degenerative arthritis to become symptomatic and aggravated her left knee condition, resulting in the need for a total knee replacement. Dr. Dalldorf explained that "the injury itself did not cause the arthritis, but it caused it [the arthritis] to become symptomatic, and it resulted in rapidly-progressive arthritis that precipitated the need for the surgery."
16. Given the filing of their Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on that form, plaintiff's left knee condition is presumed causally related to the compensable injury by accident. Defendants failed to rebut this presumption by showing that the aggravation of plaintiff's left knee degenerative arthritis and plaintiff's need for a total left knee replacement are not causally related to her April 15, 2008 injury by accident.
17. Regardless of the burden of proof, as the direct and natural result of and causally related to her April 15, 2008 admittedly compensable injury by accident, plaintiff's pre-existing, non-disabling degenerative left knee arthritis was materially aggravated for the worse to the extent that a total knee replacement procedure is required.
18. As the result of her materially aggravated left knee degenerative arthritis and need for a total knee replacement, Dr. Dalldorf medically excused plaintiff from all work as of December 17, 2008. After Dr. Dalldorf completed a Form 28U in May 6, 2009, defendants reinstated payment of total disability compensation to plaintiff.
19. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable April 15, 2008 injury by accident and her *Page 7 
materially aggravated left knee degenerative arthritis, plaintiff was only able to earn limited wages while working in the light duty position for defendant-employer during the period of September 14, 2008 through December 17, 2008. Defendants did not pay plaintiff any compensation during this period of diminshed wages.
20. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable April 15, 2008 injury by accident, her materially aggravated left knee degenerative arthritis and need for a total knee replacement, plaintiff has been unable to earn any wages in her former employment with defendant-employer or in any other employment for the period of December 17, 2008 through the present and continuing.
21. Defendants' actions in and defense of this matter have been unreasonable and based upon stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 15, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving her left knee. N.C. Gen. Stat. § 97-2(6).
2. Given the filing of their Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on that form, the Parsons' presumption applies in this matter, thereby making it defendants' burden to prove that the aggravation of plaintiff's left knee degenerative arthritis and need for a total knee replacement are not causally related to her April 15, 2008 injury by accident. Perez v. American *Page 8 Airlines/AMR Corp., 174 NC App. 128, 620 S.E.2d 288 (2005),disc. rev. improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). Based upon the totality of the credible evidence of record, defendants have failed to meet this burden. Perez v. American Airlines/AMR Corp., supra; Parsons v.Pantry, Inc., supra.
3. Regardless of the burden of proof, as the direct and natural result of and causally related to her April 15, 2008 admittedly compensable injury by accident, plaintiff's pre-existing, non-disabling degenerative left knee arthritis was materially aggravated for the worse to the extent that a total knee replacement procedure is required. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
4. Defendants admitted the compensability of plaintiff's injury by accident on April 15, 2008, by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
5. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of *Page 9 
education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
6. In the instant case, plaintiff met her initial burden to show that she is disabled. From September 14, 2008 through December 17, 2008, plaintiff was capable of earning diminished wages. The greater weight of the medical evidence shows that as the result of the work-related injuries by accident, plaintiff was physically incapable of work in any employment after December 17, 2008. Russell v. Lowes ProductDistribution, supra.
7. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations. Demery v. Perdue Farms, Inc., supra.
8. As the result of her admittedly compensable April 15, 2008 injury by accident, plaintiff was temporarily partially disabled and is entitled to be paid by defendants temporary partial disability compensation at the rate of two-thirds of the difference between her pre-injury average weekly wage of $414.47 and the limited wages she was able to earn during the period of September 14, 2008 through December 17, 2008. N.C. Gen. Stat. § 97-30. However, defendants are not responsible for payment of temporary partial disability on the dates plaintiff missed work for vacation.
9. As the result of her admittedly compensable April 15, 2008 injury by accident, *Page 10 
plaintiff was totally disabled and is entitled to have defendants pay to her total disability compensation at the rate of $276.31 per week for the period of December 18, 2008 though the present and continuing until such time as she returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
10. As the result of her admittedly compensable April 15, 2008 injury by accident, her materially aggravated left knee degenerative arthritis and need for a total knee replacement, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her total left knee replacement. N.C. Gen. Stat. §§ 97-25; 97-25.1.
11. Because defendants' defense of this matter was unreasonable, and indicative of stubborn, unfounded litigiousness, plaintiff is entitled to be paid sanctions in the form of attorney's fees for counsel for plaintiff pursuant to N.C. Gen. Stat. § 97-88.1.Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, defendants shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between her pre-injury average weekly wage of $414.47 and the limited wages she was able to earn during the period of September 14, 2008 through December 17, 2008. Having accrued, this compensation shall be paid to plaintiff in a lump sum. Defendants are not responsible for *Page 11 
payment of temporary partial disability compensation to plaintiff on the dates plaintiff missed work due to plaintiff's vacation.
2. Subject to the attorney's fee awarded below, defendants shall pay to plaintiff ongoing total disability compensation at the rate of $276.31 per week for the period of December 18, 2008 though the present and continuing until such time as she returns to suitable employment or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her admittedly compensable April 15, 2008 injury by accident, her materially aggravated left knee degenerative arthritis and need for a total knee replacement, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her total left knee replacement, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
4. A reasonable attorney's fee in the amount of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
5. Counsel for plaintiff shall submit to the attention of Commissioner Mavretic an affidavit of an accounting of the work performed on plaintiff's behalf and a requested hourly rate so that an attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1 can be assessed.
6. Defendants shall pay the costs.
This 30th day of March, 2010. *Page 12 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER